## THE STATE v. HERRING.

[No. 2,613.  Filed Nov. 24, 1897.  Rehearing denied Nov. 17, 1898.]

NUISANCE.—*Depositing Sewage in Stream.*—*Prosecution in Adjoining County.*—*Jurisdiction.*—*Criminal Law.*—A person charged with depositing offal and sewage from a factory into a river, in violation of section 2154, Burns' R. S. 1894, may, under the provisions of section 1649, Burns' R. S. 1894, be prosecuted in an adjoining county into which such offal was carried by the current of the river and deposited, to the damage of the inhabitants of such county.

From the Cass Circuit Court. *Reversed.*

*W. A. Ketcham,* Attorney-General, *Joseph N. Tillett, Walter C. Bailey, Chas. A. Cole, Merrill Moores, Alfred E. Dickey* and *William M. Aydelotte,* for State.

*Oliver H. Bogue,* for appellee.

WILEY, J.—The appellee was indicted in the Miami Circuit Court for maintaining a public nuisance.  The venue was changed to the Cass Circuit Court, where a motion was made to quash each count of the indictment.  The motion was overruled as to the first, and sustained as to the second count.  The State excepted to the ruling of the court in sustaining the motion to quash the second count, and thereupon the prosecuting attorney entered a *nolle prosequi,* as to the first.

Appellant has assigned as error, the sustaining of appellee's motion to quash the second count of the indictment, and that is the only question presented by this appeal.  The second count of the indictment, omitting the formal parts, is as follows:  "That Paul Herring on the 10th day of August, 1895, at the county of Miami and state of Indiana, did then and there unlawfully cause and suffer certain offal, filth, and noisome substances, the exact composition of which is to this grand jury unknown, to be collected and

to remain in a certain place, to wit, in the Wabash river, a stream of water flowing in and through the county of Wabash, in said State, and thence and through the said county of Miami, by discharging into said Wabash river, in said county of Wabash, certain noisome and filthy offal and sewage from a certain factory situated in said Wabash county, and operated and controlled by the said Paul Herring, and permitting and suffering the same to be carried by the current of said Wabash river, into the said county of Miami and there to be collected and remain, to the damage and prejudice of the public, etc."

Counsel for the State assert that the indictment is based upon the provisions of section 2154, Burns' R. S. 1894 (2066, Horner's R. S. 1897), which is as follows: "Whoever erects, continues, uses or maintains any building, structure, or place for the exercise of any trade, employment, or business, or for the keeping or feeding of any animal, which by occasioning noxious exhalations or noisome and offensive smells, becomes injurious to the health, comfort, or property of individuals or the public; or causes or suffers any offal, filth or noisome substance to be collected or to remain in any place, to the damage or prejudice of others or the public; or obstructs or impedes, without legal authority, the passage of any navigable river, harbor or collection of waters; or unlawfully diverts any stream of water from its natural course or state, to the injury of others; or obstructs or incumbers, by fences, buildings, structures, or otherwise, any public grounds; or erects, continues, or maintains any obstruction to the full use of property, so as to injure the property of another or to essentially interfere with the comfortable enjoyment of life, shall be fined, etc."

Counsel, both for the appellant and appellee have

State *v.* Herring.

presented and discussed but one question, and that is the question of jurisdiction. It is contended by appellee, that the indictment shows upon its face, that the offense charged against him, if any, was committed in the county of Wabash, and for that reason, the Miami Circuit Court had no jurisdiction of his person. On the other hand, the appellant contends, that, under the averments of the indictment, appellee was triable in either county, as it is averred that the "noisome and filthy offal and sewage," which he caused to be discharged into the river in Wabash county, was permitted by him to be carried by the current of the river into Miami county, and there to be collected and remain, to the damage and prejudice of the public. It is evident that this is not a prosecution under section 2169, Burns' R. S. 1894 (2075, Horner's R. S. 1897), for befouling a stream of running water, "of which any use is or may be made for domestic purposes," and as the State has selected the statute above quoted, as the basis of its prosecution, it must be bound thereby. The question of jurisdiction in this State, is fixed and defined by statute, and for the purpose of determining whether the Miami Circuit Court was clothed with jurisdiction to hear and determine the question here presented, under the facts charged, it is pertinent for us to refer to and consider some of the statutes fixing and defining jurisdiction. Section 1643, Burns' R. S. 1894 (1574, Horner's R. S. 1897), is as follows: "Every person committing an offense against the laws of this state is liable to be punished therefor in the county having jurisdiction." The word "jurisdiction" as here used, must be construed as referring to the jurisdiction of the person or the county in which the offense was committed, and not the subject-matter of the offense, for it must be conceded, that each

county in the State, has equal and like jurisdiction, as to the subject-matter of all crimes and offenses. Section 1649, Burns' R. S. 1894 (1580, Horner's R. S. 1897), is as follows: "When a public offense has been committed partly in one county and partly in another, or the act or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." Section 1650, Burns' R. S. 1894 (1581, Horner's R. S. 1897), provides that: "When property taken in one county by burglary, robbery, larceny, or embezzlement has been brought into another county, the jurisdiction is in either county." Section 1654, Burns' R. S. 1894 (1585, Horner's R. S. 1897), provides that, "When a public offense has been committed on the boundary of two or more counties, or so near to the line that it is uncertain on which side thereof the offense was committed, the jurisdiction is in either county." There are other statutory provisions on the subject of jurisdiction, but, as they have no practical application to the question here involved, it is unnecessary to refer to them.

Counsel for appellant, in their brief say: "It certainly requires no violent stretch of the imagination to conceive of many cases where sewage might be discharged into a stream of water in one county, and produce no offensive or injurious effect in that county, but might produce such effect lower down the stream, in an adjoining county, * * * as, in this case, the water of the river is used for drinking and domestic purposes by the entire population of a city of eight or ten thousand inhabitants in the lower county, but is put to no such use in the county of Wabash. We take it that the fact that the water-works system of the city of Peru draws its water supply from the Wabash river would be a circumstance sufficient to render that an action-

State *v*. Herring.

able pollution of the water of such river in Miami county, which might be entirely harmless in Wabash county where the river water is not so used." As to this proposition we have nothing to do, for such question is not presented by the indictment before us. This is not a prosecution under the statute for befouling a stream of running water "for which any use is or may be made for domestic purposes;" and, when counsel say that the entire water supply for domestic use, for the city of Peru is drawn from the Wabash river, they go entirely outside the record. The case of the *State* v. *Taylor*, 29 Ind. 517, cited by appellant, is not in point, for there the indictment was for befouling a running spring, near a public highway, from which many persons, travelers and others, were in the habit of drinking. There was no jurisdictional question apparent on the face of the indictment, or raised by plea.

This brings us to the sole and only question: Where an act is done in one county, from which injurious effects follow in another county, and such effects constitute an offense under the statute, will a prosecution lie in the latter county? Or, in other words, could the offender be prosecuted in either county? We must keep in mind that this is a prosecution for committing and maintaining a nuisance. Our statute has defined a nuisance as follows: "Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Section 290, Burns' R. S. 1894 (289, Horner's R. S. 1897). From this definition, the averments of the indictment clearly charge the commission of a nuisance. The cause which produced

the effect, had its origin, or was put in motion, according to the indictment, in Wabash county, and its resulting injury and prejudice to the public had its culmination in Miami county.

It would seem that under the provisions of section 1649, Burns' R. S. 1894 (1580, Horner's R. S. 1897), in such case the jurisdiction would be in either county. In *Archer* v. *State*, 106 Ind. 426, it was held that where there was a conspiracy to commit murder in one county, and the victim was seized in such county, and taken into another, and killed, the jurisdiction was in either county. Mr. Bishop, in his work on Criminal Law (7th ed.), section 116, says: "In reason and according to the better authorities, when a crime is really committed a part in one country and part in another, the tribunals in either may properly punish it; provided that what is done in the country which takes jurisdiction is a substantial act of wrong, and not merely some incidental thing, innocent in itself." In *Archer* v. *State, supra,* the court said: "There was not only preparation in Martin county to commit the specific crime finally consummated in Orange, but there was an overt act forming a material part of the crime committed in the former county, and the parties would be indictable at common law in that county. * * * The acts done by the appellant and his associates were, we repeat, a part of the crime; they were material, and they were substantial wrongs, so that it would seem that, at common law, jurisdiction would vest in the county where those acts were committed. We are not, however, to decide this case upon the rules of the common law, but upon the provisions of our statute, which reads thus: 'When a public offense has been committed partly in one county and partly in another, or the act or effects constituting or requisite to the consummation of the

offense occur in two or more counties, the jurisdiction is in either county.'" Continuing the court further said: "In the case before us, we regard the assault upon the deceased in Martin county as an essential part of the crime and 'as an act requisite to its consummation,' and we do not doubt that the legislature had power to provide for the punishment of the crime either in the county where it was commenced, or in the county where the last act was done. This power is often necessary in order to prevent an absolute failure of justice; nor is its existence doubtful, for it has ever been the law, illustrated and declared by a great number of cases, that a crime committed partly in one jurisdiction and partly in another may be punished in either jurisdiction." *Hauk* v. *State*, 148 Ind. 238, is also strongly in point. There an attempt was made to commit an abortion in Fountain county, and the crime was consummated in Montgomery county, by a miscarriage and death. From that case we quote the following: "The inquiry then is, what are the essential elements which are required to exist or be present in order to constitute the offense defined by section 1996, Burns' R. S. 1894 (1923, R. S. 1881), upon which this prosecution is based, and did any of these elements or material parts exist, or occur in Montgomery county, as shown by the averments in the indictment? It is evident, we think, that the crime charged against appellant does not alone consist of merely prescribing for, or administering the drug, medicine, or substance to either the pregnant or supposed pregnant woman, with the intent to procure a miscarriage, or by using some instrument or other means with a like intent. Miscarriage or death of the woman must result as a consequence of the unlawful antecedent act or acts done, or perpetrated by the accused with the

intent to procure the abortion, or no crime under the statute is committed. Miscarriage or death, as the case may be, crowns the offense, and constitutes a material part thereof. The indictment charges that Grace McClamrock, the woman upon whom the alleged crime was perpetrated, in consequence of the use of the instrument and substance, miscarried and died in Montgomery county. Either of these facts is a material part of the offense, which, when combined with those averred to have occurred in Fountain county, constitute the crime in its entirety. It must follow, then, that, under the cases cited, the offense charged was partly committed in each of the counties mentioned, and in accordance with section 1649, Burns' R. S. 1894 (1580, R. S. 1881), jurisdiction was lodged in the circuit court of either, and the appellant, therefore, was rightfully indicted and tried in Montgomery county." In Wisconsin there is a statute which provides that where a mortal wound is given in one county, and in consequence thereof death ensues in another county, prosecution therefor will lie in either county. In *State v. Pauley*, 12 Wis. 599, a mortal wound was given in one county, the victim died in another, and it was there held that the proper court in either county, which first took cognizance of the crime, would retain exclusive jurisdiction. In that case the defendant was indicted for shooting one Clark, in Clark county, and the indictment showed that he died in Grant county. The Grant Circuit Court assumed jurisdiction, and tried the case. From the opinion we quote the following: "The offense of manslaughter did not consist of the mere shooting and wounding of the deceased. On the contrary, the causing of his death was the most material element of the offense, and this did not take place there. The blow was struck in one county, and its effect was pro-

duced in another." And so it was held under a statute very similar to ours, that the prosecution would lie in either county. In *Ruckman* v. *Green*, 9 Hun 225, it was held that an action would lie in New York for an injury to lands situated·in said state, though the business which occasioned the injury and constituted the nuisance was carried on upon lands situated in New Jersey. In *Borden* v. *Crocker*, 10 Pick. 383, the supreme court of Massachusetts held that where an injury to a fishery was occasioned in one county by an obstruction to the passage of the fish, erected in another county, the owner of the fishery, could bring his action for damages in either county. In *Thompson* v. *Crocker*, 9 Pick. 59, it was held that an action would lie for damages to a mill, by the erection of a dam, in a county other than the one in which the mill was situated. In Vol. 4, Am. & Eng. Ency. Law, p. 736, it is said: "Where a crime is composed of several elements, and a material one exists in either one of the counties, the courts of either county may rightfully take jurisdiction of the entire crime." It was held in New York, that a statute declaring that one committing burglary and larceny in one county, may be indicted, tried and convicted in the county to which he carried the stolen property, was valid, and that a prosecution would lie in the latter county. In this State under section 1650, *supra*, it is the settled law, that property taken in one county by burglary, robbery or larceny or embezzlement, has been brought into another county, the jurisdiction to try the offender is in either county. *Hutchinson* v. *State*, 62 Ind. 556; *Beaty* v. *State*, 82 Ind. 228.

It seems to us that upon the authorities cited, and the principles therein declared, the question now before us is very easy of solution. The indictment charges that the appellee in the county of

Miami "did unlawfully cause and suffer certain offal, filth and noisome substances  *  *  *  to be collected and remain, ' * * * in the Wabash river, a stream of water flowing through the county of Wabash, * * * and into and through the said county of Miami, by discharging into said Wabash river in said county of Wabash, certain noisome and filthy offal and sewage from a certain factory sit-. uated in said Wabash county, and operated and controlled by the said Paul Herring, and permitting and suffering the same to be carried by the current of said Wabash river into the county of Miami, and there to be collected and remain to the damage and prejudice of the public, etc." Referring to the statute upon which the indictment is founded, so much of it as is applicable to the offense charged is as follows: "Whoever * * * causes or suffers any offal, filth or noisome substance to be collected, or to remain in any place to the damage or prejudice of others or the public,  *  *  *  shall be fined, etc."

It clearly appears from the indictment, that the initial step, or element in the offense charged against appellee, was committed in Wabash county, by discharging into the Wabash river, in said county, the filthy and noisome substance named. He then suffered it to be carried down the river by the current, and permitted it to be collected and remain in Miami county to the damage and prejudice of the public. Under this charge, we must hold that discharging the offensive substance into the river in Wabash county, was an essential part of the crime, and as "an act requisite to its consummation," without which, the offense could not have occurred. Hence it comes within the provision of section 1649, Burns' R. S. 1894 (1580, Horner's R. S. 1897), and may be punished in the county where it had its origin, or in the county

where the last act was done, or where it was consummated. So far as the record shows, the Miami Circuit Court first took cognizance of the offense, and assumed jurisdiction. It was authorized to do so by the express provision of the statute cited, and it follows that the court erred in sustaining appellee's motion to quash. The judgment is reversed, with instructions to the court below to overrule appellee's motion to quash the second count of the indictment.