# Richmond

MONTANA HACKNEY V. COMMONWEALTH OF VIRGINIA.

November 24, 1947.

Record No. 3261.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley and
Buchanan, JJ.

The opinion states the case.

*W. B. Snidow*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Ballard Baker*, for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

This writ of error presents only one question—whether loud, boisterous, vile and abusive language uttered by a man standing on his porch to a person passing along the public

highway within thirty feet of the speaker constitutes disorderly conduct within the meaning of chapter 296 of the Acts of 1946.

The vile and abusive language in question was used by a son to his mother, and within the hearing of at least two other persons on the highway. It is conceded that the language used constitutes disorderly conduct within the usual definition of that term, which is "all such acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency, whether committed by words or acts." 17 Am. Jur. 99.

The pertinent provisions of the act are: "If any person behaves in a riotous or disorderly manner in any street, highway, public building, or any other public place, other than those mentioned in the preceding section, * * *, he shall be guilty of a misdemeanor."

The only contention of the accused is that before any party can be convicted of disorderly conduct under the statute, he must be physically present in the highway or other public place.

It is a fundamental principle of criminal law that when one puts in force an agency for the commission of a crime, he, in contemplation of the law, accompanies the agency to the point where it becomes effectual. This principle is applied frequently to determine the venue of a prosecution.

The facts in *Burton* v. *United States*, 202 U. S. 344, 26 S. Ct. 688, 50 L. Ed. 1057, were that a member of Congress was indicted in the United States Court for the Eastern District of Missouri for illegally agreeing to accept compensation for his services as a congressman. It was alleged that the offense was committed in St. Louis, Missouri, and the defendant objected to the venue on the ground that he was never in Missouri. The contract was consummated by letters mailed in Washington and delivered to the addressee in St. Louis. It was held that the contract was made in St. Louis in conformity with the intention of

both parties, and that, in contemplation of law, the offense was committed in St. Louis where the offer was accepted, even though the accused was not physically present at the time.

The same principle was applied in *State* v. *Herring*, 21 Ind. App. 157, 48 N. E. 598, 51 N. E. 951, 69 Am. St. Rep. 351; *Garrett* v. *State*, 41 Ga. App. 545, 153 S. E. 628; *Simpson* v. *State*, 92 Ga. 41, 17 S. E. 984.

In 14 Am. Jur. 927, this is said: "In accordance with the general rule, it is well settled that where one absent from a state commits a crime therein by the hand of an innocent agent, such absentee is liable in that state."

Criminal libel is composed of two elements. One is the writing of the prohibited words and the other is the publication of the writing. The crime is committed not where the words are formulated but where they are heard or read by third persons. The mere writing of the words is not a crime, hence the completion of the offense depends upon the conditions existing at the place where the writing is received. See 19 A. L. R. 1534; and *State* v. *Syphrett*, 27 S. C. 29, 2 S. E. 624, 13 Am. St. Rep. 616.

This court held, in *Lewis* v. *Commonwealth*, 184 Va. 69, 34 S. E. (2d) 389, that disorderly conduct was not a crime at common law and that section 4533 of Code of 1919 did not, in express terms, prohibit disorderly conduct on a bus used as a common carrier of passengers. Shortly after this opinion was published, the General Assembly adopted the act in question (Acts 1946, p. 494), title to which reads: "An Act to amend the Code of Virginia, by adding a new section numbered 4533-a, to provide punishment for riotous or disorderly conduct in certain public places and to permit cities and towns to parallel this section." The title, the language of the act and the time of its adoption clearly indicate that it was the intent of the legislature to broaden the scope of section 4533 and to make disorderly conduct in any public place a misdemeanor.

Webster's International Dictionary, 2d Ed., defines

"place" as "a portion of space occupied by a body;" "any particular spot or locality." The same authority defines "public" as "open to the knowledge or view of all; generally seen, known, or heard; without privacy, concealment, etc." "A place so near and so open that persons traveling the highway can see card or dice playing thereat is abstractly and per se a public place." 6 Words and Phrases, p. 5807. Bouvier's Law Dictionary defines "public place" as "Any place so situated that what passes there can be seen by any considerable number of persons, if they happen to look."

While the statute is penal and must be construed strictly against the Commonwealth, the dominant purpose of its enactment was to preserve peace and good order. The statute, strictly construed, does not require the person, charged with its violation, to be physically present in the highway or other public place. A person violates the statute if, while physically present in the highway, his conduct is such as tends to corrupt public morals or to outrage the sense of decency of others who may not be in the highway but may be within sight or hearing of the perpetrator. Such person is equally guilty if, while not physically present in the highway, he sets in motion an agency that tends to corrupt public morals or outrage the sense of decency of others using the highway in a peaceful and lawful manner. In either event, the crime has been committed in a highway or other public place. In the first instance, the perpetrator was physically present in the highway when he committed the criminal acts or uttered the words. In the second instance, he was not physically present in the highway but his acts or words were seen or heard by others lawfully using the highway. The statute prohibits disorderly behavior in public.

It would be absurd to hold that a person, who stood in his own yard thirty feet from the highway and threw rocks at pedestrians passing by, was not a violator of the statute. The rocks were the agency which the party used in dis-

turbing that part of the public who happened to be on the highway at the time the rocks were thrown.

It would be equally absurd to hold that a person was not a violator of the statute who, at night, stood in his own yard thirty or more feet from the highway and deliberately used a searchlight to blind passing motorists on the highway. The violator would not be physically present in the highway, but the result of his conduct in using the agency of the searchlight would disturb the peace and good order of parties in and lawfully using the highway.

In this particular case the voice was the agency used by the accused with deliberate intent to, and in the natural course of events it did, outrage the sense of decency of parties in and lawfully using the highway.

"The use of offensive language on one's own premises does not constitute a violation of Section 720 of the Penal Law unless that person communicates it to the public; for example, shouts offensive language from a window on a public street and thus annoys and disturbs some person or persons who are within hearing of the voice." *People* v. *Trumble*, 147 Misc. 727, 264 N. Y. S. 576, 578.

The judgment of the trial court is affirmed.

*Affirmed.*