PRESENT:  All the Justices

JACK EUGENE TURNER

                                  OPINION BY
v.  Record No. 161804             ELIZABETH A. McCLANAHAN
                                  March 1, 2018

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Jack Eugene Turner appeals the decision of the Court of Appeals of Virginia upholding his conviction for displaying a noose on a public place with the intent to intimidate, and placing others in reasonable fear of death or personal injury, in violation of Code § 18.2-423.2.  Turner argues the display was not proscribed under the statute because, although visible from a public road, it was located on his own property.  Concluding that the noose display was on a public place under our construction of the statute, we affirm the conviction.

I.

The material facts are undisputed.  Turner owned and lived on property in Franklin County adjoining a public road known as Lindsay Lane.  Several other families also lived on Lindsay Lane, some of whom were African-American.  With the intent of intimidating his African-American neighbors, Turner displayed a noose in a tree in his front yard from which he hung a black, life-size mannequin.  The display was located approximately 15 to 30 feet from Lindsay Lane and clearly visible from this public road.  The evidence also established that the display directly tended to place certain of Turner's African-American neighbors in reasonable fear of death or bodily injury.

Based on these facts, Turner was indicted under Code § 18.2-423.2, and then tried and convicted of this crime in a bench trial.  Code § 18.2-423.2 states:

A. Any person who, with the intent of intimidating any person or group of persons, displays a noose on the private property of another without permission is guilty of a Class 6 felony.

B. Any person who, with the intent of intimidating any person or group of persons, displays a noose on a highway or other public place in a manner having a direct tendency to place another person in reasonable fear or apprehension of death or bodily injury is guilty of a Class 6 felony.

Because Turner's noose display was located on his own property, subsection A of the statute was not implicated by his actions. In regard to subsection B, as relevant to this appeal, Turner argued unsuccessfully to the trial court in his pre-trial motion to dismiss, motion to strike the Commonwealth's evidence, and post-trial motion to reconsider, that because the display was on his own "private property" it was not located on a "public place" as required for a violation of subsection B. Code § 18.2-423.2(B). The term "public place" is not defined in the statute.

Affirming his conviction, the Court of Appeals in a published opinion likewise rejected Turner's contention that privately owned property cannot constitute a public place for purposes of Code § 18.2-423.2(B) and that his noose display was thus outside the scope of this provision. *Turner v. Commonwealth*, 67 Va. App. 46, 62-65, 792 S.E.2d 299, 306-08 (2016). In rejecting Turner's construction of the statute, the Court of Appeals substantially relied upon *Hackney v. Commonwealth*, 186 Va. 888, 891-93, 45 S.E.2d 241, 242-43 (1947), where this Court defined the term "public place" under the disorderly conduct statute to include private property generally visible by the public from some other location. *Turner*, 67 Va. App. at 63-65, 792 S.E.2d at 307-08.

II.

A.

Turner argues in this appeal that the Court of Appeals, like the trial court, erroneously construed the "public place" element of Code § 18.2-423.2(B) by holding that his noose display

located on his own property but visible from Lindsay Lane was displayed on a public place for purposes of the statute.[1]  As this presents a purely legal issue of statutory construction, we review the issue de novo.  *Scott v. Commonwealth*, 292 Va. 380, 382, 789 S.E.2d 608, 609 (2016); *Jordan v. Commonwealth*, 286 Va. 153, 156, 747 S.E.2d 799, 800 (2013).

We are guided in our analysis of Code § 18.2-423.2 by familiar principles of statutory construction.  When construing a statute, our "primary objective," as always, is "to ascertain and give effect to legislative intent" from the words of the statute.  *Lawlor v. Commonwealth*, 285 Va. 187, 236, 738 S.E.2d 847, 875 (2013) (quoting *Conger v. Barrett*, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)).  In determining that intent, we are to give those words "their ordinary meaning, unless it is apparent that the legislative intent is otherwise," *Phelps v. Commonwealth*, 275 Va. 139, 142, 654 S.E.2d 926, 927 (2008) (citations omitted); and we "presume that the General Assembly chose, with care, the words that appear in a statute."  *Johnson v. Commonwealth*, 292 Va. 738, 742, 793 S.E.2d 321, 323 (2016) (citation omitted).  Furthermore, the "plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction."  *Meeks v. Commonwealth*, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (quoting *Commonwealth v. Zamani,* 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)).  We also presume that, in choosing the words of the statute, "the General Assembly acted with full knowledge of the law in the area in which it dealt."  *Philip Morris v. The Chesapeake Bay*

---

[1] Raising a separate issue, Turner sought to argue to the Court of Appeals that he had an absolute right under the First Amendment to display the noose in a threatening manner on his own property.  The Court of Appeals ruled that this argument was procedurally defaulted under Rule 5A:20(e) because he "failed to cite any authority whatsoever in support" of the argument in his opening brief.  *Turner*, 67 Va. App. at 61, 792 S.E.2d at 306.  Turner sought to raise the same argument in his opening brief to this Court, referring only generally to the First Amendment.  Assuming without deciding that the argument is not procedurally defaulted, we need not address it because Turner abandoned it altogether at oral argument.

3

*Found.*, 273 Va. 564, 576, 643 S.E.2d 219, 225 (2007) (citing *United Masonry, Inc. v. Riggs Nat'l Bank*, 233 Va. 476, 480, 357 S.E.2d 509, 512 (1987)).

Additionally, because Code § 18.2-423.2 is a penal statute, it must be strictly construed with regard to any reasonable ambiguity, meaning Turner is "entitled to the benefit of any reasonable doubt concerning the statute's construction." *Waldrop v. Commonwealth*, 255 Va. 210, 215-16, 495 S.E.2d 822, 825 (1998) (citing *Harward v. Commonwealth*, 229 Va. 363, 365, 330 S.E.2d 89, 90 (1985)). This principle, however, "does not prevent consideration by the courts of the general purpose and design" of the statute when construing it. *Tiller v. Commonwealth*, 193 Va. 418, 423, 69 S.E.2d 441, 444 (1952) (citing *Donnelley v. United States*, 276 U.S. 505, 512 (1928)). Therefore, "we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein." *Alger v. Commonwealth*, 267 Va. 255, 259, 590 S.E.2d 563, 565 (2004) (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002)).

B.

Applying these principles, we conclude that Turner's noose display located in his front yard and clearly visible from a public road unmistakably falls within the purview of the Code § 18.2-423.2(B) element proscribing a noose display located on a public place.

1.

Under its express terms, Code § 18.2-423.2(B) is not limited to public property, Turner's contentions to the contrary notwithstanding. (Throughout this case, Turner has erroneously used the terms "public place" and "public property" interchangeably.) Comparing the statute's two proscribed locations for displaying a noose, we see in subsection A that the General Assembly has spoken in terms of "property," specifically "private property" (prohibiting the display of a

4

noose on the private property of another without permission) whereas in subsection B it chose to speak in terms of a "place," specifically a "public place." "We have repeatedly stated that when the General Assembly uses two different terms in the same act, it is presumed to mean two different things." *Roe v. Commonwealth*, 271 Va. 453, 458, 628 S.E.2d 526, 529 (2006) (citations and internal quotation marks omitted). Accordingly, because we presume that the word "place" under subsection B means something different than the word "property" under subsection A, the term "public *place*" under Code § 18.2-423.2(B) (emphasis added) is not limited in scope to public *property*—a term nowhere found in the statute. In other words, under subsection B, whether a noose display is on privately or publicly owned property is not determinative of whether it is located on a public place. If the General Assembly had intended to limit the proscription of a noose display to public property under subsection B (in contrast to a particular category of "private property" in subsection A), it could have easily so provided in lieu of the language it actually used.[2] Since the General Assembly did not see fit to do so, we will not write into subsection B words of limitation that were not included. "It is the function of the

---

[2] Indeed, the General Assembly has repeatedly demonstrated that it knows how to make a proscription apply specifically to public property when that is desired. *See, e.g.*, Code § 10.1-2209 (making it "unlawful to post or erect any historical marker, monument, sign or notice, on public property or upon any public street, road or highway in the Commonwealth" unless a certain supporting written certificate has been issued "attesting to the validity and correct record of the historic event, incident or fact set forth in the marker"); Code § 18.2-282.1 (making it "unlawful for any person to point, hold, or brandish a machete or any weapon, with an exposed blade 12 inches or longer, with the intent of intimidating any person or group of persons and in a manner that reasonably demonstrates that intent," and providing that if the violation occurs "upon public property within 1,000 feet of" any public, private, or religious elementary, middle, or high school, including buildings and grounds, he is guilty of a Class 6 felony); Code § 18.2-323.01 (making it "unlawful for any person to dispose of a dead body . . . (i) on private property without the written permission of the landowner or (ii) on public property"); Code § 33.2-802 (making it "unlawful for any person to dump or otherwise dispose of trash, garbage, refuse, litter . . . or other unsightly matter on public property").

5

judiciary to interpret statutes. Rewriting them is the function of the legislature." *Owens v. Commonwealth*, 211 Va. 633, 638, 179 S.E.2d 477, 481 (1971) (quoting *Caldwell* v. *Commonwealth,* 198 Va. 454, 459, 94 S.E.2d 537, 540 (1956)).[3]

Turner, in misapprehending this distinction between subsections A and B, bases his principal argument upon an erroneous premise. He asserts that because he would not be in violation of subsection A if he displayed a noose on someone else's private property with permission, he necessarily could lawfully display it on his own private property—regardless of his intent to use it to intimidate his neighbors and its direct tendency to place them in reasonable fear of death or bodily injury. The fallacy is in Turner's failure to recognize that a noose display placed on private property, whether with or without permission, remains subject to independent scrutiny under subsection B, including consideration of the "public place" element. Code § 18.2-423.2(B).

2.

In *Hackney,* this Court defined the term "public place" in a similar statutory context, as indicated above. There, the defendant, while standing on his porch, uttered "loud, boisterous, vile and abusive language" directed at a person passing along a nearby highway, and was convicted of disorderly conduct. 186 Va. at 889-90, 45 S.E.2d at 241-42. On appeal, it was conceded that the language defendant used constituted disorderly conduct within the usual definition of that term. Defendant argued, however, that "before any party can be convicted of disorderly conduct . . . he must be physically present in the highway or other public place,"

---

[3] *See also Levick v. MacDougall*, 294 Va. 283, 295 n.11, 805 S.E.2d 775, 781 n.11 (2017); *Newberry Station Homeowners Ass'n v. Bd. of Supervisors*, 285 Va. 604, 626-27, 740 S.E.2d 548, 560-61 (2013) (McClanahan, J., concurring).

which, according to defendant, excluded him.  *Id*. at 890, 45 S.E.2d at 242.  The disorderly

conduct statute provided at that time, in relevant part: "If any person behaves in a riotous or

disorderly manner in any street, highway, public building, or any other *public place* . . . he shall

be guilty of a misdemeanor."  *Id*. (emphasis added).

The Court in *Hackney* relied on the following common definitions in deciding the

meaning of the term "public place" in the disorderly conduct statute:

> Webster's International Dictionary, 2d Ed., defines "place" as "a portion of space occupied by a body;" "any particular spot or locality."  The same authority defines "public" as "open to the knowledge or view of all; generally seen, known, or heard; without privacy, concealment, etc."  "A place so near and so open that persons traveling the highway can see card or dice playing thereat is abstractly and per se a public place."  6 Words and Phrases, p. 5807.  Bouvier's Law Dictionary defines "public place" as "Any place so situated that what passes there can be seen by any considerable number of persons, if they happen to look."

*Id*. at 891-92, 45 S.E.2d at 242-43.  Thus concluding that a public place in the context of the

disorderly conduct statute included private property generally visible by the public from some

other location, the Court held that defendant's subject conduct on his porch had been committed

in a public place and affirmed his conviction.  *Id*. at 893, 45 S.E.2d at 243.

The General Assembly did not alter this construction of the term "public place" in

response to *Hackney*, which has stood for more than 70 years, and we perceive no valid reason

for not applying it to the same term under Code § 18.2-423.2 (B) in a similar context in the

present case.  In this regard, we are mindful that "considerations of *stare decisis* weigh heavily in

the area of statutory construction, where [the legislature] is free to change this Court's

interpretation of its legislation."  *Illinois Brick Co*. v. *Illinois*, 431 U.S. 720, 736 (1977).[4]

---

[4] Turner urges us to adopt a more limited definition of the term "public place" found in Black's Law Dictionary: "Any location that the local, state, or national government maintains for the use of the public, such as a highway, park or public building. Black's Law Dictionary 1426

3.

This construction of Code § 18.2-423.2(B) is also consistent with the general purpose and design of the statute, which is to criminalize and deter what amounts to a true threat communicated by the display of a noose, i.e., the intention to intimidate another by such display and thereby reasonably place another in fear of death or bodily injury, as occurred here. *Id. See United States v. Dutcher*, 851 F.3d 757, 761 (7th Cir. 2017) (addressing a "true threat" as a criminal offense and affirming the conviction); *United States v. Houston*, 683 Fed. Appx. 434, 438 (6th Cir. 2017) (same); *United States v. White*, 810 F.3d 212, 219-221 (4th Cir. 2016) (same). We thus, again, decline Turner's prompting to exclude all private property from the scope of subsection B of the statute through an unreasonably restrictive interpretation that would greatly diminish this provision's reach and deterrent effect upon the making of such threats. We decide, instead, to apply from *Hackney* the obvious and rational meaning of the term "public place" as used in Code § 18.2-423.2(B) to include private property generally visible by the public from some other location, which was undisputedly the case with the site of Turner's noose display in his front yard.

III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Appeals upholding Turner's conviction under Code § 18.2-423.2.

*Affirmed*.

---

(10th ed. 2014). In light of *Hackney*, we decline to do so. We also note that this definition is at odds with the general purpose and design of Code § 18.2-423.2, as addressed *supra*.

8