COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Judges Beales, AtLee and Malveaux
Argued at Richmond, Virginia


CITY OF EMPORIA

v.     Record No. 0792-23-2

COUNTY OF GREENSVILLE

OPINION BY
JUDGE RICHARD Y. ATLEE, JR.
JUNE 11, 2024

FROM THE CIRCUIT COURT OF GREENSVILLE COUNTY
Thomas B. Hoover, Judge Designate

Leslie A. Winneberger (David P. Corrigan; Harman, Claytor,
Corrigan & Wellman, on briefs), for appellant.

Andrew M. Bowman (Gregory J. Haley; Monica T. Monday;
Russell O. Slayton, Jr.; Gentry Locke; Slayton & Clary, on brief), for
appellee.


The City of Emporia appeals the circuit court's decision ordering it to pay $676,924.94 to

the County of Greensville as its proportionate share of the costs and expenses of the County

Sheriff's budget for fiscal year 2021-2022. On appeal, the City argues that the circuit court

incorrectly interpreted Code § 15.2-3830 to require it to pay a proportionate share of the entire

County Sheriff's budget, "including funding for the provision of law enforcement services,"

when the language of the statute only required it to share in the "costs and expenses of the circuit

court for the county" and the "salary of the 'sheriff of the county.'" The City also argues that the

circuit court erred by denying its motion craving oyer. Finally, the City argues that the circuit

court erred by granting partial summary judgment and denying the City an opportunity to present

evidence. We find that the circuit court properly denied the motion craving oyer. But we agree

that the circuit court incorrectly interpreted Code § 15.2-3830. Therefore, we affirm in part and

reverse in part.

## I. Background

Prior to 1967, the City of Emporia was a town located within the County of Greensville. On July 31, 1967, the City transitioned from a town to an independent city of the second class under Virginia law. Following this transition, the City remained within the jurisdiction of the Circuit Court of Greensville County, and the City and County share the Greensville County Circuit Court. The City and County also share the clerk of the circuit court, Commonwealth's Attorney, and County Sheriff. The qualified voters of both the City and the County elect the County Sheriff.

Because the City and County share services, Code § 15.2-3830 provides for the apportionment of certain costs and expenses between the parties. It requires the "expenses of the circuit court for the county, including jury costs, and the salaries of the judge and clerk of the circuit court and the clerk, attorney for the Commonwealth and sheriff of the county" to be shared by each party proportionally based on population. Code § 15.2-3830.

Historically, the City paid a proportionate share of the County Sheriff's entire budget. In 2021, however, the City refused to pay towards the County Sheriff's entire budget. Although it agreed to pay the portion of the budget associated with the circuit court,[1] it notified the County that it refused to pay "any portion of the costs associated with the County Sheriff's law enforcement because the City had its own police department." The County informed the City by letter that the City had an obligation to share in the costs of the County Sheriff's budget and asked the City to comply with Code § 15.2-3830. When the County invoiced the City for the shared costs, the City paid only the amount associated with the circuit court.

---

[1] Among other things, the County Sheriff provides courthouse security, civil process, and the juror summons process for the circuit court.

- 2 -

The County filed suit in the Circuit Court for Greensville County.[2]  The complaint included two counts.  Count one sought a writ of mandamus compelling the City to perform its "ministerial duty to share in the funding of the County Sheriff's budget."  Count two sought a declaratory judgment that the "City's share of the County Sheriff's budget is calculated in accordance with Code § 15.2-3830."

In response, the City filed a demurrer and a motion craving oyer.  It sought to add two documents to the complaint: a Law Enforcement Mutual Aid Agreement from 2019, and documents and communications relating to their shared dispatch and records system.  The City argued that the County put "blinders" on the circuit court by alleging in its complaint that the County Sheriff assists the Emporia Police Department with law enforcement activities in the City without including the written documents that govern the division of costs for these activities.[3]  The County noted that a motion craving oyer is only "appropriate when the document that is being craved Oyer is essential to the claim."  It argued that its claims are based on the City's statutory duty rather than any agreements, and therefore the documents were not essential to the claim.  Additionally, it argued that the Mutual Aid Agreement was between the City and County Sheriff—not the County.  The circuit court denied the motion craving oyer.  It also sustained the demurrer and denied the writ of mandamus, but it allowed the case to proceed on the request for declaratory judgment.

---

[2] The judges for the Circuit Court of Greensville County recused themselves.  Chief Justice Goodwyn appointed retired judge Thomas B. Hoover as judge designate to preside over the case.

[3] The City alleged that the Mutual Aid Agreement provided there would be no liability "for any cost associated with, or arising out of, the rendering assistance" pursuant to the Agreement because the Agreement provided that the City and County "are each fully capable of independently providing services to adequately serve their respective political subdivisions."  For the dispatch and records system, the parties agreed to split the costs equally.

The County then moved for partial summary judgment "on the limited issue of the meaning of . . . Code § 15.2-3830," which it argued was the "central issue" in the case. The County argued that the plain language of Code § 15.2-3830 requires the City to pay a proportionate share of the costs and expenses of the County Sheriff, not just the salary of the County Sheriff. It contends that the statute treats the circuit court, the clerk, the Commonwealth's Attorney, and the County Sheriff the same. It noted that the County and City have historically applied this interpretation of the statute, pointing to two contracts between the parties from 1968 and 2013, and the County attached these contracts as exhibits to its memorandum in support of partial summary judgment.

The City opposed the motion. It argued that the language of the statute requires it to pay a proportionate share of the "costs and expenses" of the circuit court, as well as a proportionate share of the salaries of the judge, the clerk of the circuit court, the Commonwealth's Attorney, and the County Sheriff. The City maintained that it was only required to pay towards the portion of the County Sheriff's budget that relates to the circuit court. It noted that the description of the costs and expenses in paragraph two of the statute, were significantly different than those for which the County argued it was responsible. Further, it asserted that the County Sheriff did not provide law enforcement services to the City, and it was therefore not a shared service. It noted that the issue "came to a head" after the County Sheriff's budget increased by 20% over three years, and it argued that it should not be bound by its past dealings with the County. Finally, the City argued that summary judgment was not appropriate as there was a factual question about what law enforcement services the County Sheriff provided to the City, and the City was entitled to a hearing and to present evidence.

The circuit court granted the County's motion for partial summary judgment. It found that an evidentiary hearing was not necessary because the issue was "a pure issue of law" that

- 4 -

was for the court to decide. It agreed with the County's interpretation of the statute, and it found that Code § 15.2-3830 required the City to pay a proportionate share of the costs and expenses of: (1) the circuit court, including jury costs, the salaries of the judge and the clerk of the circuit court, (2) the clerk, (3) the Commonwealth's Attorney, and (4) the County Sheriff. It also found that the list of costs and expenses in paragraph two of the statute was not "an all inclusive list." The circuit court referred to the fact that the City has historically paid a share of the County Sheriff's entire budget and that this course of conduct was consistent with its ruling, but it noted that "that's simply because that's the way the statute reads." It found that the statute did not provide a credit to the City for having its own police department or for the increase in the County Sheriff's budget. Thus, it granted the County's motion for partial summary judgment.

Following the hearing, the parties stipulated that the "proportion that the population of the City bears to the aggregate population of the City and County is 32.62%." They also stipulated that the total costs and expenses of the County Sheriff for fiscal year 2021-2022 was $2,075,172 and that the City's proportionate share based on population was $676,924.94. The City stipulated that it had not paid the proportionate share billed by the County. The circuit court ordered the City to pay its proportionate share of the costs and expenses in the amount of $676,924.94. The City now appeals.

II. ANALYSIS

A. *The circuit court erred in its interpretation of Code § 15.2-3830.*

The City argues in this appeal that the circuit court erroneously interpreted Code § 15.2-3830 to require it to pay a proportionate share of the County Sheriff's *entire* budget. As this issue is "a purely legal issue of statutory construction, we review the issue de novo." *Turner v. Commonwealth*, 295 Va. 104, 108 (2018).

We are guided in our analysis of Code § 15.2-3830 "by familiar principles of statutory construction." *Id.* "[O]ur primary objective is to ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 161 (2021) (quoting *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 263 (2018)). To ascertain that intent, we give the words "their ordinary meaning, unless it is apparent that the legislative intent is otherwise." *Turner*, 295 Va. at 108 (quoting *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008)). And we "presume that the legislature chose, with care, the words it used when it enacted the relevant statute." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 (2016)).

Code § 15.2-3830 provides, in relevant part,

> After a town becomes a city under this chapter, the costs and expenses of the circuit court for the county, including jury costs, and the salaries of the judge and clerk of the circuit court and the clerk, attorney for the Commonwealth and sheriff of the county shall be borne by the city and county in the proportion that the population of each bears to the aggregate population of the city and county.
>
> Such expenses and costs shall include stationery, furniture, books, office supplies and equipment for the court and clerk's office; supplies, repairs and alterations on the buildings used jointly by the city and county; and insurance, fuel, water, lights, etc., used in and about the buildings and the grounds thereto. The cost of any new building erected for the joint use of the city and county shall be provided for in like manner.

The City argues that "costs and expenses" in paragraph one refers only to the costs and expenses of the circuit court. It contends that the plain language of the statute requires it to pay for a proportionate share of (1) the costs and expenses of the circuit court, including jury costs, and (2) the salaries of the judge and clerk of the circuit court, the clerk, the attorney for the Commonwealth, and the sheriff of the county. It argues that the legislative intent was to apportion the costs and expenses of the shared circuit court, and it concedes that this may include

- 6 -

the costs and expenses of the "judge, the clerk of the circuit court, the [C]ommonwealth's

attorney, and the County Sheriff" but only insofar as those costs and expenses relate to the circuit

court. The County, on the other hand, contends that the statute requires the City to pay the costs

and expenses of (1) the circuit court, including jury costs and the salaries of the judge and clerk

of the circuit court; (2) the clerk; (3) the Commonwealth's Attorney; and (4) the County Sheriff.[4]

The plain language of Code § 15.2-3830 supports the City's interpretation of the statute.

The grammatical construction of the first paragraph separates the costs and expenses of the

circuit court from the salaries of the constitutional officers. The comma placement around

"including jury costs" sets that off as a nonrestrictive clause providing additional information

about the "costs and expenses of the circuit court for the County." *See* Bryan A. Garner et al.,

*The Redbook: A Manual on Legal Style* § 1.6, at 6 (3d ed. 2013) ("A nonrestrictive phrase or

clause is one that could be taken out of the sentence without changing the essential meaning. It

gives additional description or information that is incidental to the central meaning of the

sentence."). If, as the County suggests, both the jury costs and the "salaries of the judge and the

clerk of the circuit court" were intended to describe the costs of the circuit court, one would

expect to see commas surrounding either the entire phrase (before "including" and after "circuit

court") or after both "jury costs" and after "circuit court." But the commas set off only the

"including jury costs" phrase, suggesting that the "salaries" phrase applies to the full list of

---

[4] Code § 15.2-3830 refers to both the "clerk of the circuit court" and the "clerk." Below, the County noted that the clerk of the circuit court is the only type of clerk "shared between the City and the County," and thus, its position is that both terms refer to the clerk of the circuit court. The City appears to accept the circuit court's suggestion that it refers to "an old and now nonexistent or unfilled position." The term "clerk" is not expressly defined by statute. Title 15.2, however, refers to multiple types of clerks. *See, e.g.*, Code § 15.2-408 (referring to the "county clerk"); Code § 15.2-1538 (referring to the "clerk of the governing body of every locality," called the "clerk for the board of supervisors or council," depending on the type of governing body); Code § 15.2-1634 (providing that the clerk of the circuit court may be designated the "clerk of the governing body"). We need not determine the meaning of "clerk" in Code § 15.2-3830, as, like the circuit court, we find it does not change our analysis.

- 7 -

constitutional officers, not just the "judge and clerk of the circuit court." *See Allison v. Commonwealth*, 73 Va. App. 414, 422 (2021) (considering comma placement after an amendment to a statute).

Beyond the grammatical construction of the first paragraph, the language in the second paragraph of the statute supports this reading. *See Indem. Ins. Co. v. Nalls*, 160 Va. 246, 250 (1933) (noting a court "should not permit the spirit and intendment of [a] statute to be whittled away by the keen edge of grammatical construction"). While the first paragraph refers to the "costs and expenses" to be apportioned between the City and County, the second paragraph illustrates the meaning of the term by listing what is included in "[s]uch expenses and costs." In particular, the "expenses and costs shall include stationery, furniture, books, office supplies and equipment *for the court and clerk's office*." Code § 15.2-3830 (emphasis added). There is no mention of the attorney for the Commonwealth or the sheriff of the County, and we "presume that the legislature chose, with care, the words it used." *Cornell*, 301 Va. at 349. Thus, because the legislature did not mention the attorney for the Commonwealth or the sheriff for the County, we presume that it did not intend to include them.

In addition to ignoring this principle of statutory construction, the County's interpretation would require us to read "for the court and clerk's office" out of the second paragraph of the statute.[5] But "[w]e disfavor a construction of statutes that renders any part of the statute useless

---

[5] The County contends that our interpretation puts the first sentence of Code § 15.2-3830 in "direct conflict with the second sentence" because sentence one limits it to the costs and expenses of the circuit court, while sentence two would include the costs and expenses of both the circuit court and clerk's office. We disagree, however, that this is a conflict. Instead, the list in sentence two merely illustrates what types of costs and expenses are considered "costs and expenses of the circuit court." Code § 15.2-3830.

The County also argues that its interpretation gives effect to all the words in the statute. Specifically, and in direct conflict with its argument about the costs and expenses of the clerk's office, it argues its interpretation does not render "salaries" superfluous because the "salaries of the judge and clerk of the circuit court" is included in the costs and expenses of the circuit court. But if sentence one of the statute covered both the costs and expenses of the circuit court and the

or superfluous." *Shoemaker v. Funkhouser*, 299 Va. 471, 487 (2021). "Every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." *Davis v. MKR Dev., LLC*, 295 Va. 488, 494 (2018) (quoting *City of Richmond v. Va. Elec. & Power Co.*, 292 Va. 70, 75 (2016)); *see also Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 483 (2008) ("[E]very act of the legislature should be read so as to give reasonable effect to every word." (quoting *Jones v. Conwell*, 227 Va. 176, 181 (1984))).

We agree with the County, however, that the "expenses and costs" referred to in the second sentence of Code § 15.2-3830 is not an exhaustive list. While the word "include" in a statute generally "implies that the provided list of parts or components is not exhaustive and, thus, not exclusive," it can also be "used in a restrictive, limiting sense." *Auer v. Commonwealth*, 46 Va. App. 637, 645-46 (2005). The context in which "include" is used in Code § 15.2-3830 establishes that the General Assembly used it to introduce a non-exhaustive list. There is no limiting language in the statute that suggests the word is used in a restrictive manner. Moreover, the list following "include" in the second sentence does not mention jury costs, which are expressly included in the language in the first sentence. Further, in listing some of the costs and expenses, the statute used "etc.," the abbreviation for "et cetera," at the end of the list. "[E]t cetera" is defined as "[and] other things," and it usually "indicates additional, unspecified items in a series." *Et cetera*, *Black's Law Dictionary* (11th ed. 2019). Thus, the language of the list itself makes clear that the list is non-exhaustive.

---

costs and expenses of the clerk of the circuit court, then it would make no sense to include the salary of the clerk in the costs and expenses of the circuit court rather than in the costs and expenses of the clerk. Further, if the full costs and expenses of the circuit court, clerk of the circuit court, Commonwealth's Attorney, and the County Sheriff were intended to be included by the statute, then there would be no need to illustrate the types of costs and expenses of the circuit court. *See Spratley v. Commonwealth*, 298 Va. 187, 195 (2019) ("discourag[ing] any interpretation of a statute that would render any part of it useless, redundant or absurd" and instead "seek[ing] to read statutory language so as to give effect to every word" (quoting *Owens v. DRS Auto. FantomWorks, Inc.*, 288 Va. 489, 497 (2014))).

Although the list is non-exhaustive, we do not interpret it as broadly as the County suggests. The list in Code § 15.2-3830 refers to costs and expenses "for the court and clerk's office" and those relating to the "buildings used jointly by the city and county." The list illustrates that the General Assembly intended the City and County to share in the costs and expenses relating to the shared circuit court and the buildings used jointly. *Cf. Surles v. Mayer*, 48 Va. App. 146, 165 (2005) ("[I]f a statute provides an illustrative list of persons or things to which its provisions should apply, an unenumerated person or thing must be 'similar in nature' to those expressly listed in order to fall within the scope of the statute."). Thus, to qualify as a cost or expense under the statute, the alleged cost or expense must be "similar in nature" to those listed. *Id.*

We are not persuaded by the County's suggestion that the Supreme Court adopted its reading of the statute in prior litigation. In *County of Greensville v. City of Emporia*, 245 Va. 143, 145 (1993), the Supreme Court stated,

> As required by law, the City reimburses the County for a portion of certain costs and expenses of the circuit court and its clerk, the commonwealth's attorney, and the sheriff. The amount paid by the City is based on the proportion that the City's population bears to the aggregate population of the City and County.

First, the Supreme Court referred to "*certain* costs and expenses," not *all* costs and expenses. *Id.* (emphasis added). Second, the issue before the Court was whether the County could construct and operate a second circuit courthouse. The Court was not asked to determine what costs and expenses Code § 15.2-3830 required the City to pay.

We find that Code § 15.2-3830 requires the City to pay a proportionate share of the (1) costs and expenses of the circuit court and (2) the salaries of the judge and clerk of the circuit

- 10 -

court, the attorney for the Commonwealth, and the sheriff of the County.[6] The statute does not require it to pay a proportionate share of the County Sheriff's entire budget. Instead, the City must pay a proportionate share for those parts of the County Sheriff's budget that relate to the circuit court and the jointly used buildings.[7] The list in paragraph two of Code § 15.2-3830 is illustrative of the types of expenses for which the City must pay its fair share. Accordingly, we find that the circuit court erred in its interpretation of the statute.[8]

B. *The circuit court did not err in denying the motion craving oyer.*

The City argues that the circuit court erred by denying the City's motion craving oyer, which prevented the City from attaching the Mutual Aid Agreement and the documents relating to the dispatch and records system shared by the City and County that it contends are integral to the issue. We disagree.

We review the circuit court's decision to deny a motion craving oyer de novo. *Byrne v. City of Alexandria*, 298 Va. 694, 698 (2020). A motion craving oyer is "a remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the record." *Id.* at 700. Although the remedy was initially limited to certain types of documents, such as deeds, letters of probate, and other documents under seal, the Supreme Court has expanded the remedy over time to "include production of a

---

[6] We recognize that Code § 15.2-3822 provides that the City and County continue to share a circuit court, clerk, Commonwealth's Attorney, and Sheriff. But we find that this provision is insufficient to contradict the plain language of Code § 15.2-3830, which limits the costs and expenses to those related to the circuit court or jointly used buildings.

[7] While we agree that Code § 15.2-3830 limits the cost-sharing to those costs and expenses related to the circuit court, we reject any argument that the service provided has to specifically "benefit" the City.

[8] Because we find that the circuit court erred in its interpretation of Code § 15.2-3830, we need not reach the City's third assignment of error as that issue will be addressed by the circuit court on remand.

much wider range of documents." *Id.* at 699. Now, where a court is asked to make a ruling based upon a writing or document, that writing or document should be made a part of the record. *Id.* at 701. This is because

> [n]o intelligent construction of any writing or record can be made unless all essential parts of such paper or record are produced. A litigant has no right to put blinkers on the court and attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view.

*Id.* (quoting *Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 382-83 (1937)). But the motion "should be granted only where the missing document is essential to the claim." *Id.* at 700.

Based on the claims here, the circuit court correctly denied the City's motion craving oyer. The claim here is based solely upon an interpretation of Code § 15.2-3830. Although the County did reference certain contracts between the parties, the claim is not for breach or enforcement of those agreements, nor is it based on the agreements or other documents the City sought to introduce. The circuit court was not asked to interpret or rule on any of the documents at issue in the motion craving oyer. The sole issue was the parties' responsibilities under Code § 15.2-3830. Thus, these documents, while perhaps relevant to the parties' course of dealing, are not "essential to the claim." *Id.* Accordingly, the circuit court did not err by denying the motion craving oyer.

## III. CONCLUSION

For the foregoing reasons, the decision of the circuit court is affirmed in part and reversed in part. We remand the case to the circuit court for proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*